IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARRYL LIVERMAN,              :      CIVIL ACTIONS
                                       :
        Plaintiff,              :      NO.  10-1161
                                       :      NO.  10-2049
        v.                   :      NO.  10-2500
                                       :      NO.  10-2558
HARRIS GUBERNIK, et al.,      :
                                       :
        Defendants.           :

**OPINION AND ORDER**

**Slomsky, J.**                                                **September 21, 2010**

## I.    INTRODUCTION

Before the Court are Defendant Harris Gubernick's Motion in Opposition to Plaintiff's Application to Proceed In Forma Pauperis and Memorandum of Law in Support of the Motion (Civ. No. 10-1161, Doc. Nos. 7, 8; Civ. No. 10-2049, Doc. Nos. 5, 6; Civ. No. 2500, Doc. Nos. 5, 6; Civ. No. 10-2558, Doc. Nos. 7, 8).  Plaintiff has filed a Motion in Opposition to Defendant's Motion (Civ. No. 10-1161, Doc. No. 10 (hereinafter "Pl. Mot. Opp.")).[1]

Plaintiff initiated his four above-captioned cases on March 16, 2010, May 4, 2010, May 21, 2010, and May 26, 2010, by filing a Complaint and a Motion for Leave to Proceed *in Forma Pauperis* in each one.  In his Complaints, Plaintiff alleges claims arising under 42 U.S.C. § 1983 for a violation of various constitutional rights.  In the four cases, Plaintiff's initial Motion to Proceed *in Forma Pauperis* was denied for failure to comply with filing requirements.

---

[1] Plaintiff notes in his Motion that it would be redundant for him to file the same motion on the same issue in each case.  Accordingly, the Court will read Plaintiff's Motion in Opposition as responding to Defendants' Motion in each case.

1

Thereafter, Plaintiff resubmitted his *in forma pauperis* request in each of the above-captioned cases. Defendant Gubernick has filed a Motion in Opposition and Memorandum of Law in each case, asserting that Plaintiff falls under the "three strikes" provision of 28 U.S.C. § 1915(g), that Plaintiff's Complaints do not allege that he is in imminent danger of serious physical injury, and for these reasons Plaintiff should be precluded from proceeding *in forma pauperis*. Plaintiff has filed a Motion in Opposition to Defendant's Motion, asserting that he does not have "three strikes." A hearing on the Motions was held on August 11, 2010, where Plaintiff was required to appear and show cause why:

(1) Plaintiff should be permitted to proceed *in forma pauperis*, in view of the fact he has filed more than three actions which have been dismissed on prior occasions as frivolous, malicious or for failure to state a claim and he has failed to allege in his Complaint that he is in imminent danger;

(2) The above-captioned civil cases should not be dismissed as frivolous, malicious or for failure to state a claim; and

(3) A pre-filing injunction should not be issued which would bar Plaintiff from filing in the future any civil action in this Court without first seeking permission of the Court to file the action, in view of the fact Plaintiff has filed more than three actions which have been dismissed on prior occasions as frivolous, malicious or for failure to state a claim.

For the following reasons, the Court will deny Plaintiff's requests to proceed *in forma pauperis*. Additionally, the Court will dismiss the Complaints filed in civil actions numbered 10-1161, 10-2049 and 10-2500 with prejudice, dismiss the Complaint filed in civil action number 10-2558 without prejudice, and will impose a pre-filing injunction on Plaintiff.

## II.     FACTUAL BACKGROUND

### A.     Civil Action No. 10-1161

Plaintiff filed this civil action pursuant to 42 U.S.C. § 1983 against: Harris Gubernick, Director of Corrections of Bucks County Correctional Facility (BCCF); Terrence Moore, Warden of BCCF; Lillian Budd, Assistant Warden of BCCF; Clifton Michell, Deputy Warden of BCCF; Charles Martin, Commissioner and Prison Oversight Board Member; Diane Ellis-Marseglia, Commissioner and Prison Oversight Board Member; James Cowley, Commissioner and Prison Oversight Board Member; Tom Noon, Case Manager at BCCF; Stephen Shantz, Chief "AD"[2] and Prison Oversight Board Member; Dale Harding, Case Manager Supervisor; Sean Ryan, Chief "PO" and Prison Oversight Board Member; Ray McHugh, Controller and Prison Oversight Board Member; Susan Devlin-Scott, President Judge and Prison Oversight Board Member; and Edward Donnely, Sheriff and Prison Oversight Board Member.

In his Second Amended Complaint (Doc. No. 5), Plaintiff alleges that he was committed to BCCF on February 23, 2010 and housed in a unit containing inmates and pretrial detainees. Plaintiff asserts that the housing of pretrial detainees with convicted inmates is a violation of his rights under the Eighth Amendment to the United States Constitution not to be subjected to cruel and unusual punishment. Plaintiff alleges he reported this violation to Defendant Budd on February 26, 2010, and requested she correct the situation. Defendant Budd allegedly did not respond to Plaintiff's request. Plaintiff then filed a grievance with Defendant Moore, who also

---

[2] Plaintiff's filings are handwritten. The Court is unable to decipher this part of Stephen Shantz's title.

refused to correct the situation.  Plaintiff then filed an appeal to Defendant Gubernick.

Plaintiff alleges that it states on the prison grievance form that, once filed, the form is provided to Prison Oversight Board Members.  Plaintiff alleges that members of the Prison Board "received official notice of the constitutional violation prohibiting cruel and unusual punishment which forbids the housing of convicts and pre-trial detainees on the same housing units."  (Doc. No. 5 at 3.)  Plaintiff further alleges that "the Prison Board Members acquiesced to the violation by failing to have it corrected after being made aware of the violation."  (Id.) Plaintiff alleges that the refusal of Defendants to correct the situation constitutes "deliberate indifference."  (Id.)

**B.**  **Civil Action No. 10-2049**

Plaintiff filed this civil action pursuant to 42 U.S.C. § 1983 against the same Defendants sued in Civil Action No. 10-1161.  In his Second Amended Complaint (Doc. No. 7), Plaintiff alleges that he was placed in the restrictive housing unit of BCCF on May 1, 2010, and while housed there was denied access to law books and copying services in violation of his constitutional right to correspond with and have access to the court.

Plaintiff alleges that Defendant Budd is the assistant warden of inmate services and is denying him access to law books and copying services, and that Defendant Mitchell is the deputy warden of security and will not allow "PO's" to escort him to the law library from restrictive housing.

Plaintiff filed a grievance with Defendant Moore, who responded that Plaintiff cannot have access to law books because Plaintiff is assigned to the restrictive housing unit.  Plaintiff asserts that Defendant Gubernick has been informed of the constitutional violation and has

refused to correct it. Because the grievance form states that all information on the form is turned over to Prison Oversight Board Members, Plaintiff alleges Board Members have knowledge of the constitutional violation and acquiesced in the violation by failing to order it corrected. Finally, Plaintiff alleges that Defendants are continuing to show deliberate indifference to his constitutional right to correspond with the court.

As an exhibit to his Complaint, Plaintiff attached the grievance form he filed with prison officials. On the form, Plaintiff states, "I am in RHU and my constitutional right to be provided ink pens to draft legal documents is being denied. You are obligated by supreme ct law to provide ink pens. Bounds v. Smith, 430 U.S. 817, 824-25, 97 S. Ct. 144 (1977) . . . the ink pen I am using now is almost out of ink." In another exhibit, Plaintiff notes, "Pg 16 of Inmate Handbook states we can directly ask officers for stationary supplies. Therefore, you are to keep pens, paper and envelopes supplied in RHU, so we can obtain them as needed."

**C.    Civil Action No. 10-2500**

Plaintiff filed this civil action pursuant to 42 U.S.C. § 1983 against the same Defendants sued in Civil Actions No. 10-1161 and 10-2049, as well as Joan Crowe, Medical Director of BCCF, and David Davis, Medical Doctor at BCCF. In his Amended Complaint (Doc. No. 3), Plaintiff complains that on May 1, 2010, he "submitted a request to medical to be seen for painful callouses on [his] feet." (Doc. No. 3 at 3.) Plaintiff states he was not seen, and that he filed a grievance on May 5, 2010. Defendant Moore responded to Plaintiff's grievance, indicating that he would be seen on May 24, 2010. Plaintiff alleges he was seen but not treated. Plaintiff further alleges that he was seen by Dr. Davis on June 9, 2010, and "he still refuses to recommend treatment to have my callouses removed." (Id.) Plaintiff alleges his callouses are

"so painful that I cannot stand for any period of time without pain." (Id.)

Plaintiff alleges that Defendant Budd and all members of the Prison Oversight Board were informed of the constitutional violation and have failed to take action to correct it. Plaintiff alleges Defendants Crowe and Gubernick were also informed of the violation and failed to order it corrected. Plaintiff also alleges that prison officials and medical department personnel are showing "deliberate indifference to his medical needs." (Id.)

### D.    Civil Action No. 10-2558

Defendant filed this final civil action pursuant to 42 U.S.C. § 1983 against Sean Ryan, Chief PO,[3] Stephanie Melo, PO, James Cawley, Commissioner, Charles Martin, Commissioner, and Diane M. Ellis-Marseglia, Commissioner. In his Amended Complaint (Doc. No. 3), Plaintiff asserts that on February 24, 2010, his Fourteenth Amendment right to due process was violated by Stephanie Melo, PO, at the preliminary hearing for a violation of his parole. Plaintiff claims he was not given a written decision containing the facts and reasons for finding probable cause that he violated parole. Plaintiff further alleges he was not given the right to confront witnesses providing adverse information. Plaintiff alleges Defendant Melo "moved my final revocation hearing up from April 24, 2010, pending a competency evaluation – after she received evaluations, she then again postponed hearing until outcome of new charge." (sic) (Doc. No. 3 at 3.)

Plaintiff asserts he informed Defendant Melo's supervisor on June 1, 2010 of the constitutional violation and asked him to correct it, and that he has not done so. Plaintiff alleges

---

[3] In his Complaint, Plaintiff refers to Defendants as "PO's." It is assumed for the purposes of this Opinion that "PO" means "Probation Officer."

that Commissioners Martin, Cawley and Ellis-Marseglia hire the POs. Plaintiff asserts that "the Probation and Parole Office of Bucks County is viciously and deliberately denying my chance at liberty as well as showing deliberate indifference to my 14th Amendment constitutional right to due process." (Id.)


III.     DISCUSSION

In the Prison Litigation Reform Act of 1995 (PLRA), Congress changed the minimum requirements to be met by indigent prisoners who file civil actions. In re: Alea, 286 F.3d 378, 380 (6th Cir. 2002). Pursuant to 28 U.S.C. § 1915(b)(1), the traditional waiver of filing fees for prisoners with *pauperis* status was replaced with a requirement that all prisoners pay the required filing fee with periodic deductions from their prisoner account. Id. In addition, § 1915(g) imposes a restriction on prisoner litigants with a history of filing frivolous or malicious civil actions. Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [proceedings in forma pauperis] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

As a result, § 1915(g) "forbids almost all attempts by indigent prisoners to gain access to the federal courts in civil actions if they have had three or more prior dismissals as described in that statute." In re: Alea, 286 F.3d at 380 (citation and quotation marks omitted).

Section 1915 further directs the court to screen complaints filed *in forma pauperis* to

determine if they are frivolous or if they fail to state a claim upon which relief may be granted. McAllen v. Attic Away from Home, No. 00-941, 2000 WL 1752618, at *1 (D. Del. Nov. 17, 2000). Pursuant to § 1915(e)(2)(B)(i) and (ii), a court shall dismiss a case brought under this section, "notwithstanding any filing fee, or any portion thereof, that may have been paid," if the court determines that "the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted."

Plaintiff has brought three or more actions that have been dismissed for the reasons set forth in § 1915(g), and thus the "three strikes provision" applies to him. Additionally, Plaintiff specifically asserted at his hearing before the Court on August 11, 2010, that he was in "good spirits, mentally and physically," and was not in imminent danger. (Trans., 16, ln. 2-3.)[4] Therefore, the imminent danger exception to the "three strikes" preclusion under § 1915(g) does not apply and this section prevents Plaintiff from bringing these actions *in forma pauperis*.

Furthermore, with the exception of civil action number 10-2558, Plaintiff's civil actions with the docket numbers 10-1161, 10-2049 and 10-2500 have no merit and fail to state a claim for which relief may be granted. These cases will be dismissed with prejudice pursuant to 28

---

[4] At the hearing, Plaintiff stated:

> Your Honor, I'm not here pleading – and please don't argue for the defendants if you're trying to ploy with, because I'm not imminent – in imminent danger, I don't deserve to go in forma pauperis. I cited you Fifth and Ninth Circuit law. . . laws that you have to abide by to allow me to proceed in forma pauperis because I did not appeal any dismissed complaint by Judge Caldwell.

(Trans., 19, ln. 1-8.)

U.S.C. § 1915(e)(2)(B)(ii). Finally, the Court will issue a pre-filing injunction pursuant to 28

U.S.C. § 1651, which a district court is permitted to issue to "preclude abusive, groundless and

vexatious litigation." Brow v. Farrelly, 994 F.2d 1027, 1038 (3d Cir. 1993).

### A.    28 U.S.C. § 1915(g) and the "Three Strikes" Rule

In order for Plaintiff to fall under the "three strikes provision" of § 1915(g) which

prohibits filing civil actions *in forma pauperis*, he must have previously filed three cases which

were previously dismissed because the action was frivolous, malicious or failed to state a claim.

Andrews v. King, 398 F.3d 1113, 1116, 1120 (9th Cir. 2005). Plaintiff has had three or more

civil actions dismissed for failure to state a claim under 28 U.S.C. § 1915(e), satisfying the three

strikes provision of § 1915(g).

Plaintiff asserts he does not have three strikes because none of his Complaints were ever

dismissed as frivolous or malicious, and because he never appealed any decision dismissing a

complaint for failure to state a claim. (Pl. Mot. Opp. at 2, 3). Plaintiff points to Jennings v.

Natrona County Detention Center Medical Facility, 175 F.3d 775 (10th Cir. 1999) and Adepegba

v. Hammons, 103 F.3d 383 (5th Cir. 1996), as standing for the proposition that a strike is not

counted until the appellate process is completed. Plaintiff is correct insofar as an action that is

dismissed for failure to state a claim does not count as a strike if an appeal of that dismissal is

pending. However, Plaintiff misconstrues the holdings of the cited cases when he argues that

because he never appealed the dismissal of his cases, he has no strikes. Rather, Jennings and

Adepegba clearly hold that a "dismissal should not count against a litigant until he has exhausted

*or waived* his appeals." Jennings, 175 F.3d at 780 (emphasis added); see Adepegba, 103 F.3d at

387 ("A dismissal should not count against a petitioner until he has exhausted *or waived* his

appeals." (emphasis added)).

In a civil case, a party wishing to appeal an order or judgment must file a notice of appeal within thirty days after the judgment or order appealed from is entered. Fed. R. App. P. 3(a)(1) and 4(a)(1)(A); Brown v. Beard, 371 Fed. App'x 257, 258-60 (3d Cir. 2010) (applying Rule 4(a)(1)(A) to a claim under 42 U.S.C. § 1983 brought by a pro se prisoner). "[T]he taking of an appeal within the prescribed time is mandatory and jurisdictional." Bowles v. Russell, 551 U.S. 205, 209 (2007) (internal citation and quotation marks omitted). Failure to file a timely notice of appeal deprives the appellate court of jurisdiction. Id. at 209-10. Where, as here, a party fails to file a timely notice of appeal of an order, the party effectively waives his right to appeal that order. As the Court of Appeals for the District of Columbia Circuit held, "[e]ven if district court dismissals do not count as strikes while appeal is available, once the time of appeal has expired, that is the end of the matter, and untimely attempts to appeal do not change the situation." Smith v. District of Columbia, 182 F.3d 25, 28 (D.C. Cir. 1999).

Accordingly, Plaintiff's failure to file an appeal in his prior civil actions does not preclude this Court from considering the prior cases, which were dismissed for failure to state a claim, as strikes, so long as the time for appeal has expired. The Court will now consider each of Plaintiff's prior suits.[5]

---

[5] Two opinions have been issued in the Middle District of Pennsylvania holding that Plaintiff has three strikes under § 1915(g). Liverman v. Grace, Civil No. 04-1425, Doc. No. 7 and Liverman v. Kyler, Civil No. 04-1689, Doc. No. 5. While the Court takes judicial notice of these opinions, it will conduct its own independent analysis of Plaintiff's prior cases to establish three strikes.

1. <u>Civil Action No. 03-1821</u>

In Civil Action No. 03-1821, brought in the Middle District of Pennsylvania against Jeffrey Beard, the Secretary of Corrections, and other Defendants, Plaintiff filed a Complaint alleging denial of access to the courts. The court held Plaintiff's Complaint lacked "an essential element of the claim, that Plaintiff's pursuit of a lawsuit was actually injured by the defendants' conduct." (Doc. No. 10, at 1.) Plaintiff's claim was dismissed, but he was given leave "to file an amended complaint to specify, if true, how any nonfrivolous lawsuits or any other legal proceedings he filed, or wanted to file, were hindered by the defendant's conduct." Thereafter, Plaintiff filed a letter informing the court that he would not file an amended complaint (Doc. No. 11). The court then dismissed his Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (Doc. No. 12, at 1-2.) Plaintiff never filed a notice of appeal in this action. Accordingly, Civil Action No. 03-1821 is a "strike" under § 1915(g).

2. <u>Civil Action No. 03-2198</u>

In Civil Action No. 03-2198, brought in the Middle District of Pennsylvania against Jeffrey Beard, as the Secretary of Corrections, and other defendants, Plaintiff alleged in his Complaint that he received a "false misconduct" and was denied access to documentary evidence that was used against him. (Doc. No. 8, at 1.) The court held that Plaintiff's claim, based on a false report by a prison official resulting in 30 days in disciplinary custody, did not state a constitutional violation because it did not "result in an atypical and significant hardship in relation to the ordinary incidents of prison life." (<u>Id</u>. at 5 (citation and quotation marks omitted)). Furthermore, since Plaintiff had no protected liberty interest in not being subjected to disciplinary custody, there was no due process violation in the denial of Plaintiff's request for documentary

evidence. The court dismissed Plaintiff's Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff never filed a notice of appeal in this action. Consequently, Civil Action No. 03-2198 is a "strike" under § 1915(g).

        3.     <u>Civil Action No. 04-0995</u>

In Civil Action No. 04-0995, brought in the Middle District of Pennsylvania against James Grace and other defendants, Plaintiff filed a Complaint alleging various due process violations involving his receipt of an allegedly false misconduct report and denial of witnesses at his misconduct hearing. (Doc. No. 7 at 1.) Once again, he was placed in disciplinary custody. The court held that Plaintiff's Complaint did not state a claim for which relief may be granted because Plaintiff had no right not to be placed in disciplinary segregation because such placement is not an "atypical and significant hardship in relation to the ordinary incidents of prison life." (<u>Id</u>. at 7 (citation and quotation marks omitted)). Furthermore, Plaintiff failed to allege personal involvement of two defendants in the events described by Plaintiff, who failed to state a claim against those defendants based on doctrines limiting liability of prison officials in § 1983 cases. (<u>Id</u>. at 8.) Finally, Plaintiff's claim regarding denial of a request for a witness was dismissed because he did not have a protected liberty interest in the hearing, and his claim regarding defendants' failure to respond to Plaintiff's administrative appeal was dismissed because Plaintiff was not entitled to a response under the law. (<u>Id</u>. at 9.) The court dismissed Plaintiff's Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff never filed a notice of appeal in this action. Accordingly, Civil Action No. 04-0995 is a "strike" under § 1915(g).

4.     Civil Action No. 04-1045

In Civil Action No. 04-1045, Plaintiff filed another § 1983 case in the Middle District of Pennsylvania against James Grace and other defendants alleging he was denied treatment for his emotional problems while incarcerated in violation of his Eighth Amendment rights. (Doc. No. 52, at 1.) Defendants filed a Motion to Dismiss. (Id. at 5.) The court held Plaintiff failed to state an Eighth Amendment claim with respect to the denial of adequate mental health care for his emotional needs. Plaintiff did not allege facts showing acts or omissions by prison officials sufficiently harmful to amount to deliberate indifference to a serious medical need. (Id. at 6, 8-10.) The court dismissed Plaintiff's claim. Plaintiff subsequently filed a motion under Fed. R. Civ. P. 59(e) to alter or amend the judgment, but his motion was denied. (Doc. No. 72.) Therefore, Civil Action No. 04-1045 is a "strike" under § 1915(g).

5.     Civil Action No. 08-1562

Finally, in Civil Action No. 08-1562, Plaintiff filed yet another § 1983 case in the Eastern District of Pennsylvania against Harris Gubernick and other defendants alleging he was denied adequate mental health care in violation of his Eighth Amendment rights. Defendants filed a Motion to Dismiss, which this Court granted. (Doc. No. 60.) The Court held Plaintiff failed to state an Eighth Amendment claim with respect to the denial of adequate mental health care. Plaintiff did not allege facts showing acts or omissions by prison officials sufficiently harmful to constitute deliberate indifference to a serious medical need. (Id. at 7-14.) Plaintiff was granted leave to file an amended complaint against certain defendants, but Plaintiff failed to do so. Accordingly, Civil Action No. 08-1562 is another "strike" under § 1915(g).

In sum, Plaintiff has had three civil or more actions dismissed as either frivolous or for failure to state a claim upon which relief may be granted, thereby satisfying the three strikes provision of § 1915(g). This provision precludes him from filing the instant actions without first paying the full filing fee.

**B.      Imminent Danger**

Because Plaintiff has "three strikes," he is not permitted to bring a civil action *in forma pauperis* unless he is under "imminent danger of serious physical injury."[6] 28 U.S.C. § 1915(g). Because Plaintiff is proceeding *pro se*, his filings will be "liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

" 'Imminent' dangers are those dangers which are about to occur at any moment or are impending." Abdul-Akbar v. McKelvie, 239 F.3d 307, 315 (3d Cir. 2001). The Third Circuit has stated that, in using this term, Congress intended the exception to work as a "safety valve" to prevent impending harms. Id. ("The imminent danger exception allows the district court to permit an otherwise barred prisoner to file a complaint [*in forma pauperis*] if the prisoner could be subject to serious physical injury and does not then have the requisite filing fee."). Plaintiff must allege that he faces impending harm in order for the exception to apply because without an allegation of harm the Court lacks any basis for evaluating the imminence of the harm. Compare Ibrahim v. District of Columbia, 463 F.3d 3 (D.C. Cir. 2006) (finding that plaintiff was in imminent danger where he described in detail denial of medical treatment and where he showed

---

[6] In order for a prisoner to invoke the imminent danger exception, the imminent danger must exist at the time of filing. Abdul-Akbar v. McKelvie, 239 F.3d 307, 312-13 (3d Cir. 2001). The standard does not require a plaintiff to prove existing injury. It is sufficient if the condition poses an imminent danger. Gibbs v. Cross, 160 F.3d 962, 965 (3d Cir. 1998).

that continued failure to treat his condition could lead to liver damage and possibly death); with

Mitchell v. Federal Bureau of Prisons, 587 F.3d 415, 422 (D.C. Cir. 2009) (finding that

plaintiff's case failed to fall within the imminent danger exception because, despite the fact that

plaintiff suffered from a potentially deadly disease as in Ibrahim, the Complaint failed to allege

that plaintiff faced any impending harm).

Courts applying the imminent danger exception have found that it does not apply where a

plaintiff merely suffers from an ailment or affliction that adversely affects his health or safety and

no other risks are impending. See, e.g. Brown v. Beard, No. 08-0743, 2010 WL 1257967, at *4

(E.D. Pa. Mar. 25, 2010) (finding that plaintiff was not in imminent danger despite the fact that

he suffered from Hepatitis C because he failed to show that his health risk posed an *imminent*

threat to his health or safety). In contrast, courts have found that the exception does apply where

the alleged harm is continuing or part of an ongoing pattern of harm. See, e.g. Ashley v.

Dilworth, 147 F.3d 715, 717 (8th Cir.1998) (finding that plaintiff was in imminent danger where

he alleged that he was knowingly placed with individuals who were likely to attack him as they

had in the past).

Here, Plaintiff fails to allege in each case that he faces imminent danger.[7]  Additionally, at

---

[7] In his Second Amended Complaint in Civil Action No. 10-1161 (Doc. No. 5), Plaintiff
alleges that he was placed in a unit that housed pretrial detainees together with convicted
inmates. Although Plaintiff alleges that such placement violated his rights under Eighth
Amendment, he failed to allege that the placement put him in any danger.

In his Second Amended Complaint in Civil Action No. 10-2049 (Doc. No. 7), Plaintiff
alleges he was denied access to law books and copying services in violation of his constitutional
right to correspond with the court.  This denial did not place him in imminent danger.

In his Second Amended Complaint in Civil Action No. 10-2500 (Doc. No. 3), Plaintiff

his hearing before this Court on August 11, 2010, Plaintiff stated he is not in imminent danger. He was in "good spirits, mentally and physically," and asked the Court "please don't argue for the defendants if you're trying to ploy with, because I'm not imminent – in imminent danger, I don't deserve to go in forma pauperis." (Trans., 16, ln. 2-3 19, ln. 1-8).

Under these circumstances, the appropriate remedy is dismissal of Plaintiff's four consolidated cases. Plaintiff has "three strikes" and cannot tenably claim that he is in imminent danger as discussed above. Proceeding *in forma pauperis* is a privilege, not a right. Davison v. Joseph Horne & Co., 265 F.Supp. 750, 753 (3d. Cir. 1967). Plaintiff has exceeded the bounds of this privilege, and should not be permitted to proceed *in forma pauperis*. Because this Court also finds *infra* that three of Plaintiff's four consolidated cases fail to state a claim, for this additional reason these cases will be dismissed with prejudice. In these three cases, Plaintiff will not be given the further opportunity to pay a filing fee. Dismissal of the four consolidated cases for the reasons noted is within the Court's discretion and is the appropriate remedy. Id.

C. **Dismissal Pursuant to § 1915(e)(2)(B)(ii) for Failure to State a Claim Upon Which Relief May be Granted**

Pursuant to § 1915(e)(2)(B)(i) and (ii) of the PLRA, a court shall dismiss a case brought under the PLRA, "notwithstanding any filing fee, or any portion thereof, that may have been

---

alleges that he was denied treatment for calluses on his feet that were "so painful that [he could not] stand for any period of time without pain." Although Plaintiff has alleged harm, he has failed to allege that this harm placed him in imminent danger.

In his Second Amended Complaint in Civil Action No. 10-2558 (Doc. No. 3), Plaintiff alleges that his Fourteenth Amendment right to due process was violated at the preliminary hearing for his violation of parole. This denial did not place him in imminent danger.

paid," if the court determines that "the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted." This provision was created to protect the court system and a defendant from being inundated with meritless claims by *pro se* litigants. Neitzke v. Williams, 490 U.S. 319, 327 (1989). "The legal standard for dismissing a complaint for failure to state a claim pursuant to Section 1915(e)(2)(B) . . . is identical to the legal standard used when ruling on a Rule 12(b)(6) motion." Walker v. Hensley, No. 08-685, 2009 WL 5064357, at *4 (E.D. Pa. Dec. 23, 2009) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000), and Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir.1999)).

The motion to dismiss standard under Rule 12(b)(6) has been the subject of recent examination, culminating with the Supreme Court's decision in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). After Iqbal, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Applying the principles of Iqbal, the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) articulated a two part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. See also Edwards v. A.H. Cornell & Son, Inc., 610 F.3d 217, 219 (3d Cir. 2010). First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211.

In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it

must "show" such an entitlement with its facts.  Id. (citing Phillips v. County of Allegheny 515 F.3d 224, 234-35 (3d Cir. 2008)).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S Ct. at 1950; Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010).  This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S Ct. at 1950.

### 1.    Civil Action No. 10-1161

In his Second Amended Complaint (Doc. No. 5), Plaintiff alleges that he "was committed to BCCF on 2.23.10 and housed on a living unit containing inmates and pre-trial detainees."  (Id. at 3.)  He further alleges that such placement amounts to "the constitutional violation prohibiting cruel and unusual punishment which forbids the housing of convicts and pre-trial detainees on the same housing units."  (Id.)  Plaintiff is alleging that as a pretrial detainee, he was housed together with convicted inmates and that this placement violated his rights under the Eighth Amendment to the United States Constitution.  However, "a pretrial detainee cannot look to the Eighth Amendment for protection because [Eighth Amendment] protections do not attach 'until after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'"  Wood v. City of Lancaster, No. 06-3033, 2009 WL 80306, at *15 (E.D. Pa. Jan, 13, 2009) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (alteration in original)). Instead a pre-trial detainee's constitutional claims brought pursuant to § 1983 are analyzed under the Due Process Clause of the Fourteenth Amendment.  City of Revere, 463 U.S. at 244.  Here,

the Court will assess the viability of Plaintiffs claim under the Due Process Clause, despite the language in Plaintiff's Complaint alleging an Eighth Amendment violation.

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law . . . the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535-36 (1979). Although any pre-trial detention has the effect of restricting the freedom of movement of the pretrial detainee, the government may nonetheless "incarcerate a person charged with a crime but not yet convicted to ensure his presence at trial." Id. at 535. While such regulatory restraints are permissible, those restraints which take the form of "punitive measures may not be constitutionally imposed prior to a determination of guilt." Id. at 537. "In order to determine whether the challenged conditions of pre-trial confinement amount to punishment, '[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005) (quoting Bell, 441 U.S. at 538).

Here, prior to his trial, Plaintiff was housed with convicted inmates. This condition of restraint is only a violation of Plaintiff's due process rights if it amounts to a punishment. It does not. Housing Plaintiff with convicted inmates before Plaintiff has been convicted may have a number of legitimate purposes. For example, a housing unit containing only pre-trial detainees may have been full. In order to avoid overcrowding, BCCF staff may have placed Plaintiff in a housing unit with convicted inmates. But most importantly, housing Plaintiff with convicted

inmates does not amount to punishment and by itself is not a violation of due process. Faulcon v. City of Philadelphia, 18 F. Supp. 2d 537, 540-41 (E.D. Pa. 1998) (finding that correctional facility's policy of housing pretrial detainees with convicted inmates did not violate due process). Therefore, accepting all of the Complaint's well-pleaded facts as true, Plaintiff has failed to state a claim for which relief can be granted. Plaintiff's Complaint (Docket No. 5) in Civil Action No. 10-1161 will be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).

2.      Civil Action No. 10-2049

In his Second Amended Complaint (Doc. No. 7), Plaintiff alleges that he was placed in restrictive housing and, while there, was denied access to law books and copying services in violation of his constitutional right to have access to the court. In Bounds v. Smith, the Supreme Court recognized this right holding that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977), *overruled on other grounds*, Lewis v. Casey, 518 U.S.343, 350 (1996).

Since the Bounds decision, the Supreme Court has clarified its holding: "Bounds did not create an abstract, freestanding right to a law library or legal assistance." Lewis, 518 U.S. at 350. Therefore, mere allegations of a denial of access to books or inadequate legal assistance are not enough; "the inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id. at 351. The Supreme Court acknowledged that the Bounds decision made no mention of this "actual

injury" requirement.  Id. at 351.  It found, however, that the decision did not eliminate this "constitutional prerequisite," finding that such a requirement "is apparent on the face of almost all of the opinions in the 35-year line of access-to-courts cases on which Bounds relied."  Id.

Here, Plaintiff merely alleges he was denied access to court in violation of the Fourteenth Amendment.  Although Plaintiff has "alleged" he is entitled to relief, he has failed to "show" how this conduct hindered his efforts to pursue a legal claim or that he is entitled to relief.  Iqbal, 129 S Ct. at 1950 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'").  Consequently, Plaintiff has failed to state a claim and his Second Amended Complaint (Docket No. 7, Civil Action No. 10-2049) will be dismissed pursuant to § 1915(e)(2)(B)(ii).

3.     Civil Action No. 10-2500

In his Amended Complaint (Doc. No. 3), Plaintiff alleges that he submitted a request to BCCF to see a doctor about painful callouses on his feet.  Plaintiff alleges that, although he was "seen" by a doctor, he was not "treated" for his condition.  Plaintiff alleges that despite his request, "the prison oversight board members, prison officials and medical department are continuing to show deliberate indifference to [his] medical needs."

Failure to provide medical care to a prisoner violates the Eighth Amendment when such failure amounts to "deliberate indifference."  Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009).  "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm."  Id. (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) and

Farmer v. Brennan, 511 U.S. 825, 836 (1994)).  The failure to act must "expose[] the prisoner to a sufficiently substantial 'risk of serious damage to future health.'" Farmer, 511 U.S. at 843 (quoting Helling v. McKinney, 509 U.S. 23, 35 (1993)).  "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Estelle, 429 U.S. at 106.

In order to state a claim Plaintiff must demonstrate "(1) that [Defendants] were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Claims of inadequate treatment do not constitute "deliberate indifference" absent some more culpable state of mind. Id. (citing Estelle, 429 U.S. at 105) ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'").  The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Id.

Here, Plaintiff alleges that although he was "seen" by medical personnel on two occasions, he was not "treated."  This allegation fails to establish that prison officials acted with "deliberate indifference."  It fails to allege that prison officials intentionally refused to provide medical treatment, but merely shows that Plaintiff was dissatisfied with the treatment received. No constitutional violation arises under these circumstances. Thomas v. Dragovich, 142 Fed. App'x 33, 35 (3d Cir. 2005) (quoting Monmouth County Corr. Institutional Inmates v. Lanzaro,

834 F.2d 326, 346 (3d Cir. 1987) ("'[M]ere disagreements as to the proper medical treatment' is likewise insufficient to establish a Constitutional violation."); see also Ascenzi v. Diaz, 247 Fed. App'x 390, at *1 (3d. Cir. 2007) (quoting United States ex rel. Walker v. Fayette County Pennsylvania, 599 F.2d 573, 575 n.2 (3d Cir. 1979)) ("'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'").

In addition, Plaintiff has failed to state a claim because he has not demonstrated that his medical needs were serious. Calluses on a foot, even painful ones, are not the type of "serious medical need" that will result in a constitutional violation. See Kellam v. Hunt, No. 04-1225, 2007 WL 2764814, at *6 (N.D.N.Y. Sept. 20, 2007) ("It has been held that foot calluses or other foot problems do not rise to the level of a 'serious medical need.'"); Bennett v. Hunter, No. 02-1365, 2006 WL 1174309, at *3 (N.D.N.Y. May 1, 2006) ("[G]enerally a heart condition, a seizure disorder, and a disc problem in one's back are 'serious medical needs,' while a pinched nerve in one's wrist, and calluses on one's feet are not 'serious medical needs.'"); Jackson v. O'Leary, No. 89-7139, 1990 WL 251769, at *2 (N.D. Ill. Dec. 17, 1990) ("[Plaintiff's] medical problem [of having calluses on his feet which allegedly required him to be able to wear gym shoes] is not one of especially grave concern."). See also Dixon v. Nusholtz, No. 98-1637, 1999 WL 507031 (6th Cir. June 10, 1999) (finding foot calluses that required orthopedic shoes were not a "grave medical need").

Therefore, the Court will dismiss Plaintiff's Amended Complaint (Docket No. 3, Civil Action No. 10-2500) for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).

4.    Civil Action No. 10-2558

In his Amended Complaint (Doc. No. 3), Plaintiff alleges his Fourteenth Amendment right to procedural due process was violated during his preliminary hearing for violation of parole when he was denied the right to confront persons providing adverse information against him and when he was not given a written decision containing facts and reasons for finding probable cause to believe that he violated his parole.

"[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due to a defendant in such a proceeding does not apply to parole revocations." Calhoun v. Pennsylvania Bd. of Probation & Parole, No. 09-1707, 2010 WL 2982993, at *3 (E.D.Pa. Mar. 23, 2010) (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)).  However, a defendant in such proceedings is afforded certain due process rights.  The "minimum requirements of due process" in the context of parole revocations "include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Morrissey, 408 U.S. at 489.

In his Amended Complaint, Plaintiff alleges that he was not given a written summary of the evidence and arguments presented, that he was not given a written decision of the facts and

reasons for a finding of probable cause, and that he was not given the right to confront persons providing adverse information. Plaintiff has alleged facts which, if proven, would amount to a denial of due process. Therefore, this Complaint is sufficient to state a claim and will not be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii). However since Plaintiff has "three strikes" as described above, pursuant to § 1915(g), Plaintiff will not be permitted to proceed *in forma pauperis* on this claim. Plaintiff's Amended Complaint (Doc. No. 3, Civil Action No. 10-2558) will be dismissed without prejudice. If he desires to re-file this Complaint, the filing fee must be paid in full.

### D.     Pre-Filing Injunction

The Court is mindful that a judicially-imposed restriction on an individual's access to court constitutes an extreme remedy for frivolous litigants. However, the Court of Appeals has held that "a continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filings of complaints without the permission of the [C]ourt." In re Oliver, 682 F.2d 443, 446 (3d Cir. 1982). With these considerations in mind, the Court has determined that it is proper to serve Plaintiff with a pre-filing injunction pursuant to 28 U.S.C. 1651(a) due to his history of frivolous filings.

It is well established that, pursuant to the All Writs Act 28 U.S.C. § 1651(a), a district court may issue a pre-filing injunction. See, e.g. Brow v. Farrelly, 994 F.2d 1027, 1038 (3rd Cir. 1993). The injunction restricts a plaintiff's future access to the courts by requiring he "obtain the approval of the court before filing further complaints." Abdul-Akbar v. Watson, 901 F.2d 329, 332 (3rd Cir. 1990). Pre-filing injunctions are designed to permit a district court "to issue such

injunctions to preclude abusive, groundless and vexatious litigation." Brow, 994 F.2d at 1038.

The issuance of a pre-filing injunction is "an extreme remedy that must be narrowly tailored and sparingly used." Abdul-Akbar, 901 F.2d at 333. However, as the Court explained in Abdul-Akbar, when a plaintiff brings claims on the same grounds as previously adjudicated claims, the claims are false, and controlling law precludes the claims, a pre-filing injunction is proper. Id. "More specifically, when a district court concludes that a litigant has abused the judicial process by filing a multitude of frivolous § 1983 cases in a relatively brief period of time and will continue to file such cases unless restrained, we hold that the court may enter an injunction directing that the litigant not file any section 1983 claims without leave of court." Id. If the imposition of an injunction is warranted by the circumstances, a court is required to give the plaintiff prior notice and an opportunity to respond. Brow, 994 F.2d at 1038.

Here, although Plaintiff's claims appear to contain different fact patterns, at least eight have been found to lack merit. Most cases cover a situation where Plaintiff feels the need to resort to a court whenever he is dissatisfied with his conditions of confinement. A court is not the proper party to run a prison on a daily basis and should only intervene when constitutional rights are violated. See Turner v. Safley, 482 U.S. 78, 84-85 (1987) ("[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. . . . [T]he problems of prisons in America are complex and . . . are not readily susceptible of resolution by decree. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial

restraint.") (internal quotation and citations omitted). Moreover, the same prison officials are often named as defendants. They should not be repeatedly diverted from their official duties to respond to frivolous lawsuits. Moreover, the four actions before the Court were filed from March to May, 2010, and only one has a viable claim. This is a short period of time. Without imposing a pre-filing injunction further suits may be filed by Plaintiff which are vexatious of prison personnel.

Therefore, the Court finds that the imposition of an injunction is warranted by the circumstances in order to prevent Plaintiff from filing new, groundless claims. If the Court was simply to dismiss Plaintiff's cases for failure to state a claim without issuing a pre-filing injunction, the Court would not be serving justice because Plaintiff would continue to file frivolous suits thereby wasting judicial resources and diverting attention from processing good faith claims.

Additionally, Plaintiff was provided with adequate notice in the July 28, 2010 Show Cause Order that the Court was considering the imposition on Plaintiff of a pre-filing injunction. The Court gave Plaintiff the opportunity to appear on August 11, 2010 and to show why the imposition of a pre-filing injunction was not appropriate. At the hearing, Plaintiff failed to provide the Court with persuasive reasons why a pre-filing injunction should not be issued.

The Court, in imposing a pre-filing injunction, does not intend to deprive Plaintiff of a forum in which he will have access to full and fair judicial process if he is able to adequately state a claim. In imposing a pre-filing injunction, Plaintiff still has the ability to file actions. Requiring Plaintiff to seek leave of the Court when pursuing future actions will allow Plaintiff's actions to be addressed by the Court if they adequately state a claim, but will not waste Court resources and inconvenience defendants in the event that they lack merit. For these reasons, the

Court has decided to impose on Plaintiff a pre-filing injunction to limit vexatious filings in the future. Plaintiff is enjoined from instituting any new *pro se* suits in this Court, without prior permission of a Judge of this Court.  Any request for permission to file a complaint must be accompanied by (a) a copy of the proposed complaint, (b) a copy of this Opinion and the attached Order, and (c) a statement listing the titles and docket numbers of all previous lawsuits involving the same defendants or the same or similar subject matter as are involved in the proposed complaint.

## VII. Conclusion.

For the foregoing reasons, the Court will dismiss Plaintiff's Complaints and outstanding motions in civil actions 10-1161, 10-2049, and 10-2500 with prejudice.  The Court will dismiss Plaintiff's Complaint and outstanding motions in Civil Action No. 10-2558 without prejudice.  If Plaintiff wishes to pursue this claim, he must re-file and pay the filing fee in full.  This Court will also issue a pre-filing injunction pursuant to 28 U.S.C. 1651(a) that shall require Plaintiff to seek leave of court to pursue litigation in the future.

An appropriate Order follows.